OPINION
{¶ 1} In the early morning hours of September 8, 2002, Appellant, Marlena R. Holland, was with a companion at a fast-food restaurant on Fifth Avenue, in Youngstown, Ohio. The two had a fight, and Appellant exited their vehicle. She had little money and no cellular phone, so she proceeded to walk toward her home on East Dewey Avenue, which is also in Youngstown.
 {¶ 2} After walking for about 45 minutes, Appellant came upon the scene of a motorcycle accident, and asked Youngstown Police Department (YPD) Officer Robert Deichman for a ride home. He told Appellant he was unable to leave his location since he had to secure the scene. In response, Appellant became belligerent and she was eventually placed under arrest. She resisted being handcuffed and was kicking while being placed in the back of the police car. Ultimately, she kicked Officer Deichman in the thigh and in the groin.
 {¶ 3} Following a jury trial in the Mahoning County Court of Common Pleas, Appellant was convicted of assault of a peace officer, a felony of the fourth degree in violation of R.C. § 2903.13(A) and (C)(3). She was sentenced to a two-year community control sanction with a $5,000 fine, with all but $50 suspended. She timely asserts two assignments of error on appeal.
 {¶ 4} Since this matter has been pending before this Court it appears that the trial court may have released Appellant from her community control sanction. She clearly paid her fine. (7/6/06, Deposit Received for Fine.) The trial court's docket post-appeal reveals that on August 23, 2006, the trial court determined that Appellant's "probation" was terminated as of August 18, 2006. This entry, however, *Page 2 
does not actually reference her community control sanction, so there may still be some question relative to community control.
 {¶ 5} Despite the appearance of mootness, here, this Court has held that appeals challenging a felony conviction are not usually moot if the sentence has been served because there are numerous adverse consequences that accompany a felony conviction even after the sentence has been served. State v. Verdream, 7th Dist. No. 02CA222, 2003-Ohio-7284, citingState v. Golston (1994), 71 Ohio St.3d 224, 643 N.E.2d 109. Accordingly, we will address the merits of Appellant's arguments on appeal.
 {¶ 6} Appellant argues that the evidence was insufficient to sustain the conviction and that the conviction was also against the manifest weight of the evidence. For the following reasons, however, her conviction is hereby affirmed in full.
 {¶ 7} In Appellant's first assignment of error, she asserts,
 {¶ 8} "THE STATE OF OHIO FAILED TO PRODUCE SUFFICIENT EVIDENCE AS TO ALL THE ESSENTIAL ELEMENTS OF THE OFFENSE."
 {¶ 9} To determine whether evidence sufficient to support a conviction is lacking, the reviewing court must determine, "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.
 {¶ 10} R.C. § 2903.13 assault provides in part, *Page 3 
 {¶ 11} "(A) No person shall knowingly cause or attempt to cause physical harm to another * * *
 {¶ 12} "* * *
 {¶ 13} "(C)(3) If the victim of the offense is a peace officer, a firefighter, or a person performing emergency medical service, while in the performance of their official duties, assault is a felony of the fourth degree."
 {¶ 14} Appellant specifically argues that the state failed to establish that she knowingly assaulted Officer Deichman. She also claims that it was not assault since the officer suffered no real harm.
 {¶ 15} R.C. § 2901.22(B) defines knowingly:
 {¶ 16} "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 17} Contrary to Appellant's claims, the evidence presented at her trial supports the fact that she knowingly assaulted Officer Deichman.
 {¶ 18} Officer Deichman testified for the state. He explained that he was preparing his police report on the early morning of September 8, 2002, at the scene of the motorcycle accident. He was wearing his police uniform at the time. The officer was approached by Appellant, who was asking for a ride. He declined, explaining that he was unable to leave the accident scene. In response, Appellant asked for his name and badge number. Appellant became belligerent and started *Page 4 
swearing and using racial slurs. He advised her several times to leave and, when she persisted, subsequently told her that she was being placed under arrest. (Tr., pp. 132-140.)
 {¶ 19} Appellant began putting up a struggle while being placed in the police car. While Officer Deichman was handcuffing Appellant, she began kicking backwards toward him, but he was unsure whether she made contact with him at that time. YPD Officers John Hull and Edward Colon were assisting Officer Deichman. After she was handcuffed, the officers turned her around so that she could be placed into the cruiser. At this point she was facing Officer Deichman and kicking forward. She kicked Officer Deichman in the thigh and in the groin. Once finally secured in the vehicle, Appellant even attempted to kick out the windows. Officer Deichman testified that as a result of the struggle, he received no bruising nor did he seek any medical treatment. (Tr., pp. 142-145, 165.)
 {¶ 20} Contrary to Appellant's claims at oral argument, Officer Deichman did not testify at trial that he "could not recall" if Appellant had kicked him. Instead, the officer's testimony supports Appellant's conviction:
 {¶ 21} `A We had her against the car like this (indicating). She was just kind of kicking backwards like this (indicating).
 {¶ 22} "Q And how close were you in proximity to her at that time?
 {¶ 23} "A We had a hold of her arms, so we were close enough so she easily could have contacted us.
 {¶ 24} "Q You were right behind her? *Page 5 
 {¶ 25} "A Yes.
 {¶ 26} "Q Did she contact you or any other officer at that point?
 {¶ 27} "A I don't recall. If she did it wasn't very hard. And it was in the shin area, and like I said, I had a pair of boots on.
 {¶ 28} "Q In your mind she was attempting to kick you?
 {¶ 29} "A Yes.
 {¶ 30} "Q Were you eventually able to get the handcuffs on this individual?
 {¶ 31} "A Yes, we were.
 {¶ 32} "Q All right. After she was handcuffed, did she calm down at that point or did she continue to resist?
 {¶ 33} "A No. She was still trying to pull away. She was still quite belligerent, swearing, yelling.
 {¶ 34} "* * *
 {¶ 35} "Q Officer, when you attempted to place this individual on [sic] the back seat of your cruiser, did anything else happen at that time?
 {¶ 36} "A Yes, sir. We opened up the back door of my cruiser. I had one arm and Officer Hull had the other arm, and we turned her around to sit her down in the back seat of my cruiser. At that time she kicked out twice. She kicked me once in the thigh and once in the groin.
 {¶ 37} "Q So at that time she did kick out at you?
 {¶ 38} "A Yes, sir.
 {¶ 39} "Q And did make contact with you? *Page 6 
 {¶ 40} "A Yes, sir.
 {¶ 41} "Q How many times again?
 {¶ 42} "A Twice.
 {¶ 43} "* * *
 {¶ 44} "Q And obviously you were in close proximity to her at that time?
 {¶ 45} "A Correct.
 {¶ 46} "Q And in your mind at that time again, Officer, did you think she was intentionally trying to kick you?
 {¶ 47} "A Yes." (Tr., pp. 142, 143-144.)
 {¶ 48} YPD Officer Hull confirmed Deichman's testimony. Officer Hull explained at trial that Appellant was kicking and twisting in an effort to get away from Deichman. In fact, it took two police officers to handcuff her. (Tr., p. 180.)
 {¶ 49} YPD Officer Colon also testified at trial and supported Deichman's version of the incident in question. Officer Colon described watching Deichman and Hull attempt to arrest Appellant. He described Appellant as, "flailing about". (Tr., pp. 196-204.)
 {¶ 50} Appellant testified on her own behalf at trial. She described being very frightened on the night in question and she felt relief upon seeing the police. Thereafter, however, Officer Deichman refused to give her a ride home and told her to shut up when she tried to explain her situation. Appellant denied using profanity or name-calling. She denied kicking or striking the officer. Instead, she testified that *Page 7 
Officer Deichman threw her onto his police vehicle and twisted her arms when he was handcuffing her. (Tr., pp. 246-249, 260-261.)
 {¶ 51} However, she conceded that she may have made contact with Officer Deichman when he was putting her into the police car, but that this would have been accidental contact and that she never intended to harm an officer. On cross-examination, Appellant stated that all three YPD officers were lying at trial. (Tr., pp. 250-251, 258, 259.)
 {¶ 52} Notwithstanding Appellant's testimony, the evidence presented reflects that she was acting with knowledge of the possible consequences of her actions. Officer Deichman was in close proximity to her when he was placing her in his police vehicle. The fact that she was kicking at this time is sufficient to show that she knowingly kicked him in the shin and groin. An individual kicking out in close proximity to another is likely to make contact.
 {¶ 53} In addition, in State v. Jones, 8th Dist. No. 81112, 2003-Ohio-3004, the court of appeals found that Jones' actions supported his conviction for assault on a peace officer. The defendant inJones refused to comply with police orders and he kicked and flailed when he was placed in the police cruiser striking an officer.
 {¶ 54} Accordingly, and as in Jones, there was sufficient evidence in this case that Appellant acted with knowledge as that term is defined.
 {¶ 55} In addition, we note that Appellant was charged with causing or attempting to cause physical harm to a peace officer. Thus, whether or not Officer Deichman actually suffered physical harm is of no consequence. There is no *Page 8 
requirement that the officer suffer actual injury. The fact that the officer did not seek medical treatment for a kick in the groin and in the shin is not outcome determinative, here.
 {¶ 56} Based on the foregoing, Appellant's first assignment of error lacks merit. The evidence is sufficient to support Appellant's conviction in violation of R.C. § 2903.13(A) and (C)(3).
 {¶ 57} Appellant's second assignment of error claims,
 {¶ 58} "DEFENDANT/APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 59} The standard we must apply to Appellant's second assignment is a broad one:
 {¶ 60} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717.
 {¶ 61} Here, Appellant is merely making a credibility argument; that is, that her testimony was more believable than that of the officers. However, Appellant fails to point to anything indicating that the jury should have believed her testimony over that of three police officers. Appellant provided no evidence that the officers lacked credibility or that their stories were inconsistent. Thus, there is nothing in the record *Page 9 
to indicate that the jury lost its way in convicting her on the charge of assault of a peace officer. This assignment of error lacks merit.
 {¶ 62} Based on the above, Appellant's assignments of error are overruled since her conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Her conviction is hereby affirmed.
Donofrio, J., concurs.
 Vukovich, J., concurs. *Page 1